Nos. 2023-1582, 2023-1586

# United States Court of Appeals for the Federal Circuit

WIRELESS DISCOVERY LLC,

*Plaintiff-Appellant,*

v.

THE MEET GROUP, INC. AND eHARMONY, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Delaware
Case Nos. 1:22-cv-00480 and 1:22-cv-00484
(The Honorable Gregory B. Williams)

## CORRECTED BRIEF OF APPELLEES
## THE MEET GROUP, INC. AND eHARMONY, INC.

BAKER & HOSTETLER LLP

DOUGLAS A. GRADY
999 Third Avenue, Suite 3900
Seattle, Washington 98104
Telephone: (206) 566-7120
dgrady@bakerlaw.com

ANDREW E. SAMUELS
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone: (614) 228-1541
asamuels@bakerlaw.com

KEVIN P. FLYNN
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202
Telephone: (513) 852-2627
kflynn@bakerlaw.com

JEFFREY J. LYONS
1201 N. Market Street, Suite 1407
Wilmington, Delaware 19801
Telephone: (302) 468-7088
jjlyons@bakerlaw.com

*Attorneys for Defendants-Appellees*

## U.S. Patent No. 9,264,875

[Claim] **10.** A method comprising:

providing, via a computing device, accessible through any of an internet connection and a mobile telecommunications provider network, access to stored user profile information about a first user using a respective first mobile communications device and a second user, using a respective second mobile communications device;

receiving, via the computing device, indications of the locations of the first and second mobile communications devices;

receiving, via the computing device, a unique device hardware identifier from all communications devices from all users linked in a social network to associate with profiles and authenticate when users sign in to a user account;

sending, via the computing device, to the second mobile communications device, an invitation to accept any of an invitation to connect and personal attribute information from, or share personal attribute information with, the first user, upon receipt of permission from the second user to receive personal attribute information about, or share personal attribute information with, the first user; and

connecting, via the computing device, the first user and the second user through the computing device for personal communication between first user and the second user, the personal communication comprising one or more SMS, E-mail, chat/instant messaging, multimedia, voice or video,

wherein the computing device is configured to locate information about the second user from a social network file of the second user, and transmit this information to the first mobile communications device, and

wherein the first and second users are members of a same social network, and the computing device is operable to disclose social network attributes such as a picture, name, and a location of first and second users in the vicinity or within a particular distance from one another for the purpose of connecting members.

## U.S. Patent No. 9,357,352

[Claim] **1.** A system comprising:

a computing device configured to communicate with various mobile and terminal devices to manage introduction and connection of members belonging to a same network by sharing personal attributes between members such as picture(s) and name, wherein said computing device associates unique hardware identification of member devices and login credentials with member profiles and via a search process returns searches of members for others in a vicinity or in proximity thereto, and with personal attributes comprising pictures and names bringing an image of a human face to a device allocation in said search process; and

a first user using a respective first mobile communications device and a second user using a respective second mobile communications device each capable of connecting to the internet through any of a mobile telecommunications provider network and a local area wireless network,

wherein said computing device being in communication with the first and second mobile communication devices through internet connection via an application installed on the respective first and second mobile communication devices of the users, and configured to provide access to stored user profile information about said first user and said second user, respectively, including personal attributes comprising picture(s), a name, information, and a location,

wherein said computing device is configured to store static locations of members and receive information identifying current dynamic locations of all members based on real time location reporting from a client side application,

wherein said computing device is configured to calculate and determine a proximity of user locations based on any of a static and a dynamic location of the members which are updated on a profile database of said members,

wherein said computing device is configured to send to said first user upon inquiring of other members in the vicinity of said first user, personal attributes of all other members based on proximity calculations to select members that said first user may wish to connect with, and to send to said second mobile communication device an

invitation on behalf of said first user and including first user personal attributes for said second user to accept connecting with said first user,

wherein said computing device is configured to connect said first user and said second user through a members-only-social-network communication tools between said first user and said second user, wherein said communication tools comprise any of SMS, E-mail, chat/instant messaging, multimedia, voice, and video, and

wherein said computing device is configured to locate information about said second user from a social network storage file of said second user, and transmit this information to said first mobile communications device for further information beyond first introductory attributes such as picture and name only.

## U.S. Patent No. 10,321,267

[Claim] **1.** A system comprising:

a computing device configured to communicate with various mobile and terminal devices to manage introduction and connection of members belonging to a same network by sharing personal attributes between members;

a first mobile communications device communicatively linked to said computing device; and

a second mobile communications device communicatively linked to said computing device,

wherein said computing device provides access to stored user profile information about a first user and a second user,

wherein said computing device is configured to store static locations of members and receive information identifying current dynamic locations of all members in said network,

wherein said computing device is configured to calculate and determine a proximity of user locations,

wherein said computing device is configured to send to said first user upon inquiring of other members in said network of said first user, personal attributes of all other members based on proximity calculations to select members that said first user may wish to connect with, and to send to said second mobile communication device an

invitation on behalf of said first user for said second user to accept connecting with said first user,

wherein said computing device is configured to communicatively connect said first user and said second user,

wherein said computing device is configured to locate information about said second user from a social network storage file of said second user, and transmit this information to said first mobile communications device,

wherein the first user and the second user are members of a same social network, and the computing device is to disclose non-anonymous social network attributes including a picture, name, and location of the first user and the second user in a vicinity or within a predetermined distance from one another for the purpose of connecting members of the same social network based in part on proximity calculations between connecting members,

wherein said computing device permits discoverable members to have their respective devices turned on or turned off at a time of a search being conducted by said first user, wherein said computing device permits said discoverable members to have their respective devices unconnected to an internet connection service at said time of the search being conducted by said first user, and wherein any of turned off devices and disconnected devices is discoverable by said computer device as said internet connection service is configured to report said any of turned off devices and disconnected devices as discoverable based on a latest static and dynamic location in proximity to said first user.

## U.S. Patent No. 10,334,397

[Claim] **1.** A server configured to communicate with a first communication device of a first user and a second communication device of a second user over communication links comprising a cellular network, wherein the server comprises a processor configured to:

store in a data storage device a first profile associated with the first user and a second profile associated with a second user, both the first and the second profile comprises at least a picture and a name of their respective users thereby automatically eliminating

anonymous communication of the first profile and the second profile between member devices without intervention by the first user or the second user;

associate each member profile with a unique hardware identification associated with the member devices;

identify a unique ID of a second member in the vicinity and spatial proximity of a first member and provide the first member with the profile of the second member comprising a picture and name to facilitate a connection between both members;

send the second member the profile of the first member including the picture and name upon the first member initiating an invite to the second member to connect over a networking service;

inform the first member if the second member has accepted or rejected the invite to connect initiated by the first member; and

once the second member accepts the invite of the first member, store the connectivity between both members in the data storage device and facilitate a chat feature between them using respective devices connected to the server,

wherein the first user and the second user are members of a same social network, and the processor is to disclose non-anonymous social network attributes including a picture, name, and location of the first user and the second user in a vicinity or within a predetermined distance from one another for the purpose of connecting members of the same social network based in part on proximity calculations between connecting members,

wherein the server permits discoverable members to have their respective devices turned on or turned off at a time of a search being conducted by the first user, wherein the server permits the discoverable members to have their respective devices unconnected to an internet connection service at the time of the search being conducted by the first user, and wherein any of turned off devices and disconnected devices is discoverable by the server as the internet connection service is configured to report the any of turned off devices and disconnected devices as discoverable based on a latest static and dynamic location in proximity to the first user.

## AMENDED CERTIFICATE OF INTEREST

Counsel for Appellees The Meet Group, Inc. and eHarmony, Inc. certify the following:

1.     The full name of every entity represented in the case by the counsel filing the certificate: The Meet Group, Inc. and eHarmony, Inc.

2.     For each entity, the name of every real party in interest, if that entity is not the real party in interest: None/Not Applicable.

3.     For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock:

| | |
|---|---|
| *For The Meet Group, Inc.:* | The Meet Group, Inc. is a subsidiary of Parship Meet US Holding, Inc., which is a subsidiary of Parship Group GmbH, which is a subsidiary of 7Love Holding GmbH, which is a subsidiary of both PEG Management GmbH & Co. KG and ParshipMeet Holding GmbH, which is a subsidiary of ProSiebenSat.1 Media SE, a publicly traded company, and General Atlantic PD GmbH, which is a subsidiary of General Atlantic PD B.V., which is a subsidiary of General Atlantic Coöperatief U.A. |
| *For eHarmony, Inc.:* | The Meet Group, Inc. is a subsidiary of Parship Meet US Holding, Inc., which is a subsidiary of Parship Group GmbH, which is a subsidiary of 7Love Holding GmbH, which is a subsidiary of both PEG Management GmbH & Co. KG and ParshipMeet Holding GmbH, which is a subsidiary of ProSiebenSat.1 Media SE, a publicly traded company, and General Atlantic PD GmbH, which is a subsidiary of General Atlantic PD B.V., which is a subsidiary of General Atlantic Coöperatief U.A. |

4.  The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and:

(A)  appeared for the entity in the lower tribunal: None/Not Applicable; or

(B)  are expected to appear for the entity in this court: None/Not Applicable.

5.  Related cases pending in this tribunal that will directly affect or be directly affected by this court's decision in the pending cases:

*Wireless Discovery LLC v. Coffee Meets Bagel, Inc.*, No. 23-1583;
*Wireless Discovery LLC v. Down App, Inc.*, No. 23-1584;
*Wireless Discovery LLC v. Grindr, Inc.*, No. 23-1591; and
*Wireless Discovery LLC v. Hily Corp.*, No. 23-1592.

6.  All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases:

None/Not Applicable.

Date: November 7, 2023          BAKER & HOSTETLER LLP

*/s/ Douglas A. Grady*
DOUGLAS A. GRADY

*Attorney for The Meet Group, Inc.; eHarmony, Inc.*

vii

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... x

I.   INTRODUCTION ...................................................................... 1

II.  STATEMENT OF THE ISSUES ON APPEAL ................................ 3

III. STATEMENT OF THE CASE ...................................................... 3

    A.   The Wireless Discovery Patents ............................................. 3

    B.   The District Court Proceedings .............................................. 7

IV.  SUMMARY OF ARGUMENT ...................................................... 10

V.   LEGAL STANDARDS ............................................................... 14

    A.   Standard of Review ............................................................... 14

    B.   Abstract Idea Analysis ......................................................... 15

VI.  ARGUMENT ........................................................................... 16

    A.   Wireless Discovery Forfeited Many of Its Arguments ......... 16

    B.   Wireless Discovery Forfeited Any Argument Against
       Representative Claims ........................................................... 24

    C.   The Claims of the '875, '352, '267, and '397 Patents Are
       Directed to Patent-Ineligible Abstract Ideas ....................... 26

         1.   Alice Step One: The Claims Are Directed to an
            Abstract Idea ................................................................. 26

            a.   The claims of the '875 patent are directed to
                an abstract idea ..................................................... 27

b.    The claims of the '352 patent, the '267 patent, and the '397 patent are directed to abstract ideas ................................................................ 34

2.    Alice Step Two: The Claims of the Asserted Patents Do Not Recite a Patent-Eligible Inventive Concept .... 36

VII.    CONCLUSION ................................................................... 42

CERTIFICATE OF COMPLIANCE ........................................ 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ............................................................ 14

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ..................................................................... *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
  967 F.3d 1285 (Fed. Cir. 2020) ................................................. 13, 29, 32

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016) ............................................................ 16

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007) ................................................................ 14

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ................................................. 11, 32, 41

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ................................................. 11, 24, 34

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ...................................................... 22, 41

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ......................................... 26, 32, 38, 39

*Endo Pharms. Inc. v. Teva Pharms. USA, Inc.*,
  919 F.3d 1347 (Fed. Cir. 2019) ............................................................ 14

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ............................................................ 15

*Free Stream Media Corp. v. Alphonso Inc.*,
996 F.3d 1355 (Fed. Cir. 2021) ................................... 29, 32

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) .......................... 25

*Garza v. Citigroup Inc.*,
881 F.3d 277 (3d Cir. 2018) .................... 35

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ................................... 11, 16

*IGT v. Bally Gaming Int'l, Inc.*,
659 F.3d 1109 (Fed. Cir. 2011) ................... 33

*Intel Corp. v. VIA Techs., Inc.*,
319 F.3d 1357 (Fed. Cir. 2003) .......................... 33

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) .......................... 15

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018) ......................... 15, 16

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
No. 16-1055-GMS, 2017 WL 3315279 (D. Del. Aug. 3,
2017) ................................................... 17

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
119 F.3d 1070 (3d Cir. 1997) .......................... 35

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) .......................... 31

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) .......................... 34

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011) ................................. 33

*NetSoc, LLC v. Match Grp., LLC,*
    838 F. App'x 544 (Fed. Cir. 2020) ....................................... 17

*Noah Sys. Inc. v. Intuit Inc.,*
    675 F.3d 1302 (Fed. Cir. 2012) .......................................... 33

*Parus Holdings, Inc. v. Google LLC,*
    70 F.4th 1365 (Fed. Cir. 2023) .......................................... 25

*Perry St. Software, Inc. v. Jedi Techs., Inc.,*
    548 F. Supp. 3d 418 (S.D.N.Y. 2021) ................................. 18

*Polara Eng'g Inc. v. Campbell Co.,*
    894 F.3d 1339 (Fed. Cir. 2018) .......................................... 17

*Realtime Data LLC v. Array Networks Inc.,*
    No. 2021-2251, 2023 WL 4924814 (Fed. Cir. Aug. 2, 2023) ... 14, 29, 36

*Sage Prods., Inc. v. Devon Indus., Inc.,*
    126 F.3d 1420 (Fed. Cir. 1997) .............................. 17, 18, 22

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ............................................................ 16

*SmithKline Beecham Corp. v. Apotex Corp.,*
    439 F.3d 1312 (Fed. Cir. 2006) .......................................... 24

*Synopsys, Inc. v. Mentor Graphics Corp.,*
    839 F.3d 1138 (Fed. Cir. 2016) .......................................... 32

*TecSec, Inc. v. Adobe Inc.,*
    978 F.3d 1278 (Fed. Cir. 2020) .......................................... 30

*In re TLI Commc'ns, LLC Patent Litig.,*
    823 F.3d 607 (Fed. Cir. 2016) ............................................ 37

*Trinity Info Media, LLC v. Covalent, Inc.,*
    72 F.4th 1355 (Fed. Cir. 2023) .......................................... 40

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) ........................................................... 37

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ............................................................. 38

*United States v. Dunkel*,
  927 F.2d 955 (7th Cir. 1991) ............................................................... 24

*Walker Digit., LLC v. Google, Inc.*,
  66 F. Supp. 3d 501 (D. Del. 2014) ...................................................... 18

*Wireless Discovery LLC v. Bumble Trading Inc.*,
  C.A. No. 20-762-ADA (W.D. Tex.) ........................................................ 7

**Statutes**

35 U.S.C. § 101 ........................................................................................ 3

**Rules**

Fed. Cir. R. 32(a)(3) ............................................................................... 4

## STATEMENT OF RELATED CASES

Under Fed. Cir. R. 47.5(a)(2), Appellees The Meet Group, Inc. and eHarmony, Inc. submit the following related cases that are consolidated and pending in this Court:

*Wireless Discovery LLC v. Coffee Meets Bagel, Inc.*, No. 23-1583 (lead);

*Wireless Discovery LLC v. Down App, Inc.*, No. 23-1584;

*Wireless Discovery LLC v. Grindr, Inc.*, No. 23-1591; and

*Wireless Discovery LLC v. Hily Corp.*, No. 23-1592.

Date: November 7, 2023

BAKER & HOSTETLER LLP

*/s/ Douglas A. Grady*
DOUGLAS A. GRADY

*Attorney for The Meet Group, Inc.; eHarmony, Inc.*

## I.     INTRODUCTION

All four of the related patents at issue fail both steps set forth in *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014), and are therefore patent ineligible. The district court's thorough and well-reasoned opinion is not unlike the many others affirmed by this Court on this well-trodden issue; the opinion should not be upset.

At *Alice* step one, the asserted patents relate "generally to the idea of social networking" as announced by the district court, and therefore fall squarely within this Court's well-established precedent that deems social networking patents abstract. Nor is there an inventive concept of the sort required to save the patents at *Alice* step two; the patents claim nothing more than the abstract idea *itself*—implemented using conventional computer components and nothing more.

Plaintiff-Appellant Wireless Discovery LLC ("Wireless Discovery") disputes the district court's opinion by raising substantive arguments for the first time in this appeal, thereby robbing the district court of the opportunity to hit them head on below. This is, of course, improper, and they should be disregarded.

But even if they are considered in earnest, Wireless Discovery's new arguments fail. Wireless Discovery suggests the Asserted Patents are not step-one abstract due to the presence of an "authenticate" limitation. But authentication without more—authentication *qua* authentication—is *itself* an abstract idea. Moreover, this "authentication" and other alleged technical limitations that Wireless Discovery accuses the district court of overlooking (despite having overlooked them themselves) fail to explain *how* the alleged technical results are achieved.

As to *Alice* step two, Wireless Discovery is unable to identify a claimed inventive concept that could even possibly transform the abstract idea of social networking into a patent eligible invention. Nor could it, because the representative claims—whether considered individually or as an ordered combination—lack an inventive concept. And because the lack of an inventive concept is clear from a reading of the claims, the district court did not err in resolving the issue of subject-matter eligibility on the pleadings.

The district court's judgment should be affirmed.

## II.    STATEMENT OF THE ISSUES ON APPEAL

1.    Whether Wireless Discovery forfeited arguments by raising them for the first time on appeal.

2.    Whether the district court correctly held that the representative claims of the related Asserted Patents are patent ineligible under 35 U.S.C. § 101, where (1) all claims are directed to the abstract concept of social networking, (2) the patents do not claim an inventive concept beyond that abstract idea.

## III.    STATEMENT OF THE CASE

### A.    The Wireless Discovery Patents

There are four patents at issue in this appeal: U.S. Patent Nos. 9,264,875 ("the '875 patent"); 9,357,352 ("the '352 patent"); 10,321,267 ("the '267 patent"); and 10,334,397 ("the '397 patent," and together with the '875 patent, '352 patent, and the '267 patent, the "Asserted Patents"). (Appx055.) The Asserted Patents are closely related, as they are all continuations-in-part of U.S. Patent No. 8,914,024 ("the '024 patent"), which patent is not asserted in any action currently on appeal. (Appx055.) [1]

---

[1] Defendant-Appellants cite to the specification of the '875 patent (as opposed to the specifications of all four patents) because (1) at the district

The Asserted Patents purport to address a "need . . . to exchange customized information such as pictures, social network profiles, emails and phone numbers using [] mobile devices." (Appx112.)[2] They describe a social network enabling "mobile device users" to "offer to other, nearby users, their pictures or other information as part of a discovery process," to "save contacts received from other users," and to "keep contacts stored on a mobile device up to date." (Appx112.) This information may be exchanged through "social cards," which "include social profiles, emails, phone numbers and/or a picture." (Appx113.) Users communicate with a

---

court, Wireless Discovery *itself* relied exclusively upon the specification of the '875 patent in its opening brief (Appellant's Brief p. 6–13), discussing only a single limitation not disclosed in the '875 patent in its one paragraph description of the '352, '267, and '397 patents (*id.* at 14–15); (2) the Asserted Patents are continuations-in-part of the same parent; and (3) the district court, in all relevant respects, found the disclosures of the Asserted Patents to be effectively equal. (Appx055-056.) For that matter, it is probative that at the outset of its opening brief, Wireless Discovery only recites claim 10 of the '875 patent in its recitation of the Fed. Cir. R. 32(a)(3) requirement to disclose the "language of one or more exemplary patent claims illustrative of the issue(s)[.]" For these reasons and others and as discussed further *infra,* Wireless Discovery has forfeited any argument that the claims of the other Asserted Patents are distinct and separately relevant to the issues presented in these appeals.

[2] Unless otherwise noted, all citations to the district court docket are from the The Meet Group action (Case No. 1:22-cv-00484).

server hosting the social network "according to a packet-based telecommunications protocol such as GPRS, 3G, 4G, LTE or any alternative data technology." (Appx136.)

On the social network, users can be matched by an "attribute," such as location, through a "standard Bluetooth discovery process" that runs on "existing standard Bluetooth technology." (Appx112-113, Appx135.) For example, "mobile device users" may "discover other members of the same . . . social network" who are located "within a vicinity" of the users. (Appx113.) Additionally, the users' vicinity may be determined by a "location . . . reported to [a computer] server," by a location recorded in a database, or by user-defined "search criteria." (Appx114.) When a user logs in, the user's device may provide the server with an "update on location," and the server may transmit back to the device "the pictures and names, or other information, for each of the devices in the vicinity." (Appx137.)

On discovering another member of the social network, a user may "select[]" and "send an invitation" to that member. (Appx114.) The "form" of the invitation may be "a social card, VCard, or other manner of engaging another person in a social atmosphere, or even a business

setting such as a meeting, trade show, conference, etc." (Appx114.) The server may simply "inform[] User #2 of User #1's interest in connecting" and provide a "picture and personal attributes for User #2 to accept or decline the invitation to connect/chat." (Appx137.)

If the discovered member accepts the invitation, then the user and the discovered member may "exchange or send personalized, intimate contact information over the internet." (Appx114.) Contact information is stored on a "device accessible through a cellular phone network." (Appx112.) When the user and the discovered member agree to exchange this contact information, they "bypass[] . . . security/privacy barriers and/or hardware compatibilit[y]" issues between "mobile devices of different brands." (Appx112.) This bypass may be performed using "available technology and standard protocols available today," such as "cellular technology," "Bluetooth technology," and "Wi-Fi." (Appx113, Appx117.) "As an example, one member can be connected to the service of the social network and the computing device through internet service over cellular signal while the other person could be connected to the same service through WiFi® signal that provides internet access." (Appx140.)

Users may download an app from an "application provider" or request a download link from a "website." (Appx136.) Communications between the server and the app are "conducted via a common internet protocol suite." (Appx138.) Thus, if "a user switches mobile devices, all the user has to do is to install the [app] on the new device and login with his/her credentials," then the server "synchronizes all stored information to the new device." (Appx138.)

All told, the claimed social network can be "implemented on almost any type of mobile communication device," such as "a standard cell phone." (Appx112.)

## B. The District Court Proceedings

In August 2020 in the United States District Court for the Western District of Texas, Wireless Discovery sued Bumble Trading Inc. and related entities for infringement of the claims of the Asserted Patents, as well as the claims of the '024 patent. *See Wireless Discovery LLC v. Bumble Trading Inc.*, C.A. No. 20-762-ADA, D.I. 1 (W.D. Tex.). In November 2021, the district court construed certain terms from the asserted patents, and additionally held claim 1 of the '875 patent invalid as indefinite, and by extension held dependent claims 2–9 indefinite. *Id.*,

D.I. 43. Wireless Discovery thereafter voluntarily dismissed the *Bumble* action on March 18, 2022 with prejudice and without costs.

In April 2023, Wireless Discovery sued eHarmony and The Meet Group, along with six other social networking companies, alleging infringement of "one or more claims 1–20 of the '875 patent[.]" (Appx235, Appx237.)[3] Defendants-Appellees moved to dismiss, contending that the claims of the '875 patent were invalid: *some* as indefinite pursuant to the *Bumble* opinion, and *all* as directed to an unpatentable abstract idea pursuant to *Alice* and its progeny. Immediately after moving to dismiss, Defendants-Appellees answered the complaints and counterclaimed for invalidity of claims 10–20 of the '875 patent.

In July 2022, Wireless Discovery amended its complaint against eHarmony, again alleging infringement as to the claims of the '875 patent (including claims 1–9, which the *Bumble* court held invalid as indefinite), and additionally alleging infringement of claims of the '352 patent, the

---

[3] Two of the actions were voluntarily dismissed before resolution of the motions to dismiss that give rise to these appeals. The other four actions (against Coffee Meets Bagel, Inc., Down App, Inc., Grindr, Inc., and Hily Corp.) are also on appeal from a similar opinion and order issued by the district court, and have been designated as companion appeals to these appeals.

'267 patent, and the '397 patent. eHarmony moved to dismiss the amended complaint, reasserting that claims 1–9 of the '875 patent were already held invalid in *Bumble*, and further that all claims of the Asserted Patents were invalid as directed to unpatentable abstract ideas. (Appx329.)

On February 6, 2023, the district court granted eHarmony and The Meet Group's motion to dismiss. The district court held that Wireless Discovery was collaterally estopped from asserting claims 1–9 of the '875 patent, and that claims 10–19 of the '875 patent, claims 1–32 of the '352 patent, claims 1–18 of the '267 patent, and claims 1–15 of the '397 patent were invalid under Section 101 and *Alice*. (Appx061-063, Appx073, Appx075.) As detailed in its opinion, the district court found that one claim from each of the four asserted patents was representative of the other claims from that patent (Appx068), that each claim of the asserted patents was directed to the abstract idea of social networking (Appx069), and that there was "no saving inventive concept in any of the representative asserted claims." (Appx073.)

Wireless Discovery appealed.

## IV.    SUMMARY OF ARGUMENT

Wireless Discovery forfeited the vast majority of its arguments on appeal by failing to raise them at the district court.

*First*, Wireless Discovery accuses the district court of having erred in concluding that the present claims are analogous to the claims at issue in four different cases cited by the district court. But Wireless Discovery failed to discuss the cases in its district court briefing, even though Defendants-Appellees raised all four cases in their opening briefs, throughout attendant papers, and at oral argument.

*Second*, Wireless Discovery takes issue with the district court for "glossing over an array of significant technical improvements," despite never substantively discussing the purported improvements in the district court.

*Third*, Wireless Discovery says the district court erred by not mentioning a specific "authentication process" and failing to address "authentication" in the court's analysis. But again, Wireless Discovery criticizes the district court for not including or addressing an argument that Wireless Discovery never made. Wireless Discovery never raised "authentication" before the district court: the word "authentication"

10

never appeared in Wireless Discovery's briefing, and went unmentioned at oral argument.

**Fourth**, Wireless Discovery spends much of its opening brief discussing and relying on *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016). But Wireless Discovery's only citation to *BASCOM* in the district court was simply for the legal standard at *Alice* step two.

**Fifth**, Wireless Discovery includes numerous factual citations in its opening brief never raised at the district court. It is not this Court's job to consider and find new facts not presented to the district court. *See Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008).

Wireless Discovery has forfeited any arguments against the district court's analysis of representative claims. Both at the district court and on appeal Wireless Discovery has failed to point to "any meaningful argument for the distinctive significance of any claim limitations not found in the representative claims." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

Even had Wireless Discovery *not* forfeited its arguments on appeal, those arguments would fail on the merits because the asserted patents are ineligible under *Alice*. The representative claims of all four of the asserted patents are directed to the abstract idea of social network and do not have an inventive concept.

Wireless Discovery directs substantive argument only to the district court's analysis of representative claim 10 of the '875 patent. The district court correctly recognized that the seven steps claimed in claim 10 are no more than a technical gloss over the abstract idea of social networking. Thus, the district court found that claim 10 was "directed to the abstract idea of automating the conventional establishment of social networks to allow humans to exchange information and form relationships." (Appx069.)

Wireless Discovery's contrary arguments fail. Wireless Discovery makes much of the district court's purported failure to address "authentication," but even if Wireless Discovery had made this argument to the district court, "authentication" without more is itself an abstract idea.

And more broadly, the "authentication" and other technical steps that Wireless Discovery accuses the district court of overlooking do not render the claims eligible because they fail to explain *how* the results are achieved. A claim must go "beyond stating a functional result" and must "identify how the functional result is achieved." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020). The claims of the asserted patents are replete with recitations of results and functions.

Additionally, although Wireless Discovery mentions them only in passing, the claims of the '352 patent, the '267 patent, and the '397 patent are ineligible for the same reasons that the '875 patent is ineligible. As the district court correctly found, the representative claims of the other three asserted patents are also directed to the abstract idea of social networking.

Finally, the claims of the asserted patents do not recite a patent-eligible inventive concept. Wireless Discovery has never identified an alleged inventive concept in the claims that transforms the abstract idea of social networking into a patent eligible invention. Nor could it, because

13

the representative claims, whether considered individually or as an ordered combination, lack an inventive concept.

## V.   LEGAL STANDARDS

### A.   Standard of Review

This Court reviews "the grant of a Rule 12(b)(6) motion to dismiss under the law of the applicable regional circuit—here, the Third Circuit." *Realtime Data LLC v. Array Networks Inc.*, No. 2021-2251, 2023 WL 4924814, at *6 (Fed. Cir. Aug. 2, 2023) (citing *Endo Pharms. Inc. v. Teva Pharms. USA, Inc.*, 919 F.3d 1347, 1352 (Fed. Cir. 2019)). "The Third Circuit 'review[s] de novo a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).'" *Endo Pharms.*, 919 F.3d at 1352 (quoting *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007)). "To survive a motion to dismiss for failure to state a claim, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (citation omitted). Patent eligibility under 35 U.S.C. § 101 may be determined under Rule 12(b)(6) "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## B.    Abstract Idea Analysis

This Court reviews a district court's determination of 35 U.S.C. § 101 patent-eligibility issues *de novo*. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). An inventor may not patent laws of nature, natural phenomena, or abstract ideas. *See id.* (citing *Alice*, 573 U.S. at 216). To root out unpatentable abstract ideas, the Supreme Court established a two-step framework in which a court determines: 1) "whether the claim is directed to a patent-ineligible concept" such as an abstract idea, and, if so, 2) "whether the elements of the claim, considered both individually and as an ordered combination, add enough to transform the nature of the claim into a patent-eligible application." *Id.* Though it may contain underlying issues of fact, the patent-eligibility question is a question of law. *Id.*

At *Alice* step one, it is useful to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). When computer-related claims are at issue, courts also look to whether a claimed process has an analogy in the "brick-and-mortar" context (*see, e.g., Intellectual Ventures I LLC v. Symantec Corp.,* 838 F.3d 1307, 1317

(Fed. Cir. 2016)), and whether the claims purport to improve the functioning of the computer itself (*see, e.g.*, *Alice*, 573 U.S. at 224–26).

At *Alice* step two, merely claiming an abstract idea in the context of a computer does not "improve" the computer or convert the idea into a patent-eligible application of that idea. *Interval Licensing*, 866 F.3d at 1346 (citing *Alice*, 573 U.S. at 222–24). Similarly, claim elements recited at a high level of generality are not the kinds of limitations that solve a technology-based problem, even with conventional, generic components, combined in an unconventional manner. *Id.* (citing *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016)).

## VI.  ARGUMENT

### A.  Wireless Discovery Forfeited Many of Its Arguments

Although Wireless Discovery's appeal fails on the merits, it also fails for a more basic reason: Wireless Discovery forfeited many of its arguments by not making them in the district court. This Court, with few exceptions that do not apply here, does not consider new arguments raised on appeal. *See Golden Bridge Tech.*, 527 F.3d at 1322 (quoting *Singleton v. Wulff,* 428 U.S. 106, 120 (1976) ("[I]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon

below."")); *see also Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339, 1355 (Fed. Cir. 2018) (same); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("With a few notable exceptions, such as some jurisdictional matters, appellate courts do not consider a party's new theories, lodged first on appeal.")

Wireless Discovery had a full and fair opportunity to argue against the motion to dismiss to the district court. Yet now, after losing in the district court, Wireless Discovery makes completely new arguments, even going so far as to criticize the district court for not addressing new arguments that it never presented to the district court in the first place. These arguments should be disregarded. *See Sage Prods.*, 126 F.3d at 1426 ("If a litigant seeks to show error in a trial court's overlooking an argument, ***it must first present that argument to the trial court***. In short, this court does not 'review' that which was not presented to the district court." (emphasis added)).

***First***, Wireless Discovery accuses the district court of having "erred in concluding that the present claims were analogous in scope and content with the patents at issue in *NetSoc, LLC v. Match Grp., LLC*, 838 F. App'x 544, 548 (Fed. Cir. 2020); *Jedi Techs., Inc. v. Spark Networks,*

*Inc.*, No. 16-1055-GMS, 2017 WL 3315279, at *7 (D. Del. Aug. 3, 2017);

*Walker Digit., LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 508 (D. Del. 2014);

and *Perry St. Software, Inc. v. Jedi Techs., Inc.*, 548 F. Supp. 3d 418, 433

(S.D.N.Y. 2021)." (Appellant's Brief p. 17–18.)

The issue here is that Defendants-Appellees raised and discussed

each of those cases in their opening briefs in support of their motions to

dismiss (*see* Appx325-328, Appx338-340, Appx342, Appx245-246,

Appx252-254), but Wireless Discovery did not discuss **any** of those cases

in its opposition to eHarmony's motion, and spent only two sentences

discussing *NetSoc* in its opposition to TMG's motion. And even those two

sentences conveyed a different argument than the one Wireless Discovery

is now making on appeal. (*Compare* Appx279 ("The claims in *NetSoc* did

not provide a technical solution for discovery of other mobile devices for

the exchange of personal information without being constrained by

hardware compatibility issues inherent in mobile devices by different

manufacturers as do the claims of the '875 patent."), *with* Appx342.) It is

too late for Wireless Discovery to make these arguments for the first time.

*See Sage Prods.*, 126 F.3d at 1426 ("If a litigant seeks to show error in a

trial court's overlooking an argument, it must first present that argument to the trial court.").

**Second**, Wireless Discovery accuses the district court of "gloss[ing] over an array of significant technical improvements" to find that the claims were directed to an abstract idea. (Appellant's Brief p. 19.) Wireless Discovery points to the district court's analysis of claim 10 of the '875 patent and argues that "the court has removed the concept and function of the 'unique hardware identifier' in allowing discovery of potentially incompatible devices and tracking users with such identifiers." (Appellant's Brief p. 19 and n.4.) But Wireless Discovery never mentioned the "unique hardware identifier" in the district court, except for copying and pasting the language of claim 10 into its brief. (Appx275.) Wireless Discovery only referenced "unique hardware identification" when providing argument as to the alleged "inventive concept" found in the claims of the '352 patent in its brief in opposition to eHarmony's motion to dismiss. (Appx361.) And at oral argument Wireless Discovery only mentioned the "hardware identifier" as an example of a hardware component of the claims. (Appx068; Appx228 ("We have something physical attacking the problem that existed in 2008 with

these wireless devices. We talk about more steps with the unique identifier and the second member finding the profile, but then we get down to the bolded . . . .") Not once did Wireless Discovery argue to the district court that the "unique hardware identifier" itself somehow rendered the claims of the asserted patent nonabstract at *Alice* step one. And even then, the district court nevertheless addressed that claim limitation, explaining that "[t]he unique hardware identifier and turning on and off functionality are just generic computing components used for their conventional purpose." (Appx068.) Wireless Discovery has forfeited this argument.

Wireless Discovery likewise criticizes the district court for "remov[ing] the array of device-independent communication options for the users' 'mobile communications devices' available through the gateway or server ('computing device'), as set forth in the actual step 5" of claim 10 of the '875 patent. (Appellant's Brief p. 20–21.) Like "unique hardware identifier," Wireless Discovery never argued the relevance of the "mobile communications devices" in opposition to the motions to dismiss. "Computing device" appears twice in Wireless Discovery's opposition to eHarmony's motion to dismiss, and both references were in

the context of reciting part of an alleged inventive concept in the '267 and '875 patents. (*See* Appx359-360.) In the briefing with respect to the TMG motion, "computing device" only appears in Wireless Discovery's recitation of claim 10 of the '875 patent. (*See* Appx275.) Because any "computing device" was not argued by Wireless Discovery to the district court as relevant to the *Alice* inquiry, that argument is forfeited.

*Third*, Wireless Discovery accuses the district court of not mentioning the "credentials-based authentication process," "and the result is that the term 'authentication'[4] does not ever appear in the order, except in the court's initial recitation of claim 10." (Appellant's Brief p. 20; *see also id.* at 19 n.4.) Like the "unique hardware identifier," Wireless Discovery never made an argument about any "credentials-based authentication process" to the district court. And in fact, the term "authentication" never appears in Wireless Discovery's briefing and never came up during oral argument. Similarly, the term "authenticate" only appears in the recitation of claim 10 of the '875 patent. (*See* Appx275.) Again here, Wireless Discovery improperly criticizes the

---

[4] The term "authentication" does not appear in claim 10 of the '875 patent. Rather, the term used is "authenticate." (*See* Appx116; Appx063.) Defendants-Appellees discuss both terms below.

district court for not including an argument that Wireless Discovery never made. *See Sage Prods.*, 126 F.3d at 1426.

**Fourth**, Wireless Discovery relies extensively on *BASCOM* to argue that the claims of the asserted patents are not directed to an abstract idea (*see* Appellant's Brief p. 22–26) and that the district court erred in finding no inventive concept at *Alice* step two. (*Id.* at 30–32, 34.) But Wireless Discovery never analyzed *BASCOM* in the district court, and never even cited it except when stating the legal standard for *Alice* step two. (*See* Appx270.) When asked by the district court to identify "which U.S. Supreme Court or Federal Circuit case(s) it contends is most similar to the patent(s)-at-issue" for Section 101 purposes, Wireless Discovery identified *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). (Appx298-320.)[5]

---

[5] Even though identified in both the TMG and eHarmony actions as the "most similar" case with respect to the claims at issue, Wireless Discovery only references *DDR Holdings* in passing in its briefing. (*See* Appx282-283 (arguing that the claims of the asserted patents "do not try to pre-empt ever use of a social network, but rather recite a specific way to facilitate the exchange of information between mobile devices thus claiming additional features that render the claims patent eligible").) Wireless Discovery's counsel referenced *DDR Holdings* during oral argument, but never did Wireless Discovery explain exactly how *DDR Holdings* was relevant to Section 101 analysis here. (*See, e.g.*, Appx228-

For these reasons, too, Wireless Discovery has forfeited its arguments relating to *BASCOM* on appeal.

***Fifth***, Wireless Discovery cites numerous facts in its opening appeal brief never raised at the district court. For example, Wireless Discovery neither cited nor referred to figures 2, 5, or 6 from the '875 patent to the district court. (Appellant's Brief p. 8–9.) Likewise, the portion of the '875 patent that allegedly "teaches the use of an additional authentication process to ensure accuracy, enhance security, and further users' privacy" (Appellant's Brief p. 10) was not cited to the district court. Nor was the "Google Patents search for patents containing 'social network' in their titles[.]" (Appellant's Brief p. 12 n.3.) It is not the job of this Court to consider and find new facts that were not presented to the district court. *See Golden Bridge Tech.*, 527 F.3d at 1323 ("Appellate courts review district court judgments; we do not find facts.").

Wireless Discovery's newly raised arguments on appeal should not be considered. And given that *nearly every single argument* in Wireless

---

229.) In any event, the accused infringers rebutted those arguments. (*See, e.g.*, Appx222-223, Appx231.)

Discovery's appeal brief is new, the district court's order can be affirmed on this ground alone.

## B.    Wireless Discovery Forfeited Any Argument Against Representative Claims

Wireless Discovery argues that the district court improperly found that a claim from each of the asserted patents was "in fact" representative of the other claims of those patents. (Appellant's Brief p. 8.) But Wireless Discovery ignores that it failed to "'present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claims.'" (Appx067-068) (quoting *Berkheimer*, 881 F.3d at 1365). Even on appeal, Wireless Discovery fails to point out any limitations from dependent claims of any of the four patents that would weigh against representativeness. (Appellant's Brief p. 28–29.)

Even if Wireless Discovery fleetingly "raised" the representativeness argument below (Appellant's Brief p. 29), that alone would not preserve the argument on appeal. *See, e.g.*, *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument[,'] really nothing more than an assertion, does not

24

preserve a claim . . . [e]specially not when the brief presents a passel of other arguments . . . . Judges are not like pigs, hunting for truffles buried in briefs."); *see also Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365, 1371–72 (Fed. Cir. 2023) (same); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) ("If a party fails to raise an argument before the trial court, or presents only a skeletal or undeveloped argument to the trial court, we may deem that argument waived on appeal, and we do so here.").

As the district court found, Wireless Discovery at best stated that "[t]here are additional examples of differences in the claims of each of the Asserted Patents that for the purposes of brevity are not all identified here." (Appx068.) And critically, in the briefing presented in the TMG action—in which only the '875 patent was asserted—Wireless Discovery did not dispute that claim 10 was representative of the other claims. (Appx068.) Because Wireless Discovery has failed to present any meaningful argument for the distinctive significance of any claim limitations for representativeness purposes (either at the district court level and even now on appeal), the district court's holding that all claims

of the asserted patents are directed to abstract ideas and ineligible under Section 101 based on representative claims should be affirmed.

Moreover, Wireless Discovery cursorily cites four (out-of-district) cases on representativeness that it never cited to the district court. (*See* Appellant's Brief p. 28–29.)[6] This too counsels in favor of forfeiture.

### C.    The Claims of the '875, '352, '267, and '397 Patents Are Directed to Patent-Ineligible Abstract Ideas

#### 1.    *Alice* Step One: The Claims Are Directed to an Abstract Idea

Even if Wireless Discovery had not forfeited its arguments on appeal, they would fail on the merits. The Asserted Patents are ineligible under *Alice*. At *Alice* step one, courts look to the "focus" and "character" of a claim as a whole to determine if it is directed to an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Here, the representative claims of the asserted patents are directed to the abstract idea of social networking.

---

[6] Wireless Discovery also does not include any reporter citation for the four cases, nor did it include those opinions as exhibits to its brief.

### a.   The claims of the '875 patent are directed to an abstract idea

As the district court aptly summarized, claim 10 of the '875 patent can be distilled to the following steps: (1) "providing 'user profile information' about two users of 'mobile communications devices;" (2) "receiving 'indications' of the devices' locations," (3) "receiving 'identifiers' of all devices on a 'social network;'" (4) "sending one user's 'invitation' to exchange information with another user," (5) "connecting users for 'personal communication,'" (6) transmitting information from one user's 'social network file' to the other user's device," and (7) "disclosing 'social network attributes' of users who are 'in the vicinity of or within a particular distance from' each other."[7]

The district court correctly recognized that these steps are no more than a technical gloss over the abstract idea of social networking. Quoting *NetSoc*, the court found that claim 10 was "directed to 'the abstract idea of automating the conventional establishment of social networks to allow humans to exchange information and form relationships." (Appx069.)

---

[7] Wireless Discovery directs arguments only to the district court's analysis of the '875 patent.

The Court went on to find the same for the representative claims of the other patents. (Appx070-072.)

Wireless Discovery takes issue with the District Court's distillation, arguing that it failed to mention a "credentials-based authentication process" or a "unique hardware identifier." (Appellant's Brief p. 19.) This argument fails. The District Court *did* mention the "unique hardware identifier," explicitly stating that "[t]he unique hardware identifier . . . [is] just [a] generic computing component[] used for [its] conventional purpose." (Appx068.) Moreover, a "credentials-based authentication process" and a "unique hardware identifier," claimed without further detail, are precisely the types of "data-processing steps" that the district court analyzed. (*See* Appx070.)

And of course, the concept of an "authentication" step required in order to network with people is itself an abstract idea—think of many professional in-person social networking events, where one person may check another person's identity at the door (that is, "authenticate" them) to verify they registered for the event before letting them through the door. Or consider a social club that allows entrance only to members who can verify their identity. Even limited to the "matchmaking" analogy

relied-on by Wireless Discovery, a traditional matchmaker would not connect clients without "identifying" and "authenticating" their identities.

But more broadly, the "authentication" and other technical steps that Wireless Discovery accuses the district court of overlooking do not render the claims eligible because they fail to explain *how* the results are achieved. As this Court has "repeatedly held, to avoid ineligibility, a claim must have the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it." *Realtime Data*, 2023 WL 4924814, at *8 (quoting *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021)). The claim must go "beyond stating a functional result" and must "identify *how* the functional result is achieved by limiting the claim scope . . . to concrete action, in the case of a method claim." *Am. Axle*, 967 F.3d at 1302 (emphasis added).

The claims of the '875 patent, and Wireless Discovery's arguments, are replete with recitations of results and functions. The patent "associate[s] its users with specific user accounts and preferences." (Appellant's Brief p. 26.) The claims "rel[y] on the unique hardware

identifiers that each phone or other device has for its provider network to recognize and authorize a device." *Id.* And the claims "enhance[] overall system security and also allows one to customize his or her experience on the system" by "linking that identifier with the user account [and] allow[ing] second-layer credentials-based authentication." *Id.* These are goals, not inventions. Wireless Discovery and the '875 patent are silent as to *how* the '875 patent or its claims achieves these goals technically. Section 101 requires a claim to specifically identify an "improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *TecSec, Inc. v. Adobe Inc.,* 978 F.3d 1278, 1293 (Fed. Cir. 2020).

Wireless Discovery's own brief illustrates this distinction. Wireless Discovery argues that the district court's "distill[ation of] connecting step 5 removes the array of device-independent communications options for the users' 'mobile communications devices' available through the gateway or server ('computing device')." (Appellant's Brief p. 20.) Wireless Discovery then quotes the claim language of step 5:

> Connecting, via the computing device, the first user and the
> second user through the computing device for personal
> communication between first user and the second user, the
> personal communication comprising one or more SMS,
> E-mail, chat/instant messaging, multimedia, voice or video.

(*Id.* at 21.) Wireless Discovery goes on to explain the state of the art at the time of purported invention, including that "incompatible devices that . . . could not communicate with each other natively may be able to communicate through a server or gateway." (*Id.*) This, Wireless Discovery explains, is "how WhatsApp more recently has allowed iOS and Android devices to communicate better than native iMessage" and thus "[s]uch cross-platform technology is common now." (*Id.*)

But the '875 patent does not claim such a technology, or any other new advancement in technology. It does not recite, for example, a particular way for WhatsApp to "allow iOS and Android devices to communicate better" or a particular method of "communicat[ing] through a server or gateway." It merely claims a *result*—tangentially connected to technological advances. The '875 patent thus has precisely the type of functional, result-oriented claiming that this Court has warned against time and time again. *See, e.g.*, *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019) (even an "improved result,

without more stated in the claim, is not enough to confer eligibility to an otherwise abstract idea"); *Free Stream Media Corp.*, 996 F.3d at 1363–64; *Am. Axle*, 967 F.3d at 1302; *Elec. Power Grp.*, 830 F.3d at 1356 ("[T]here is a critical difference between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general.")

Wireless Discovery's other arguments also fail. ***First***, as mentioned above, Wireless Discovery devotes significant attention to discussing the state of the art at the time of purported invention. (*See* Appellant's Brief p. 2–4, 6–12, 21.) But at *Alice* step one, this discussion is irrelevant because "a claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016).

***Second***, Wireless Discovery analogizes this case at significant length to the Court's holding in *BASCOM*. (Appellant's Brief p. 22–26.) But the *BASCOM* court found the patent in that case directed to an abstract idea: "filtering content." *BASCOM*, 827 F.3d at 1348–49. If *BASCOM* is relevant here it is at *Alice* step two, and is thus discussed in more detail in Section VII.C.2.

***Third***, Wireless Discovery takes issue with the district court's finding that the representative claims lacked rules or algorithms. (Appellant's Brief p. 27–28.) Wireless Discovery cites *Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) for the proposition that a patent specification is "deficient" when it is "devoid of an 'algorithm' for performing functions associated with the limitation." (Appellant's Brief p. 27.) But Wireless Discovery's citation—indeed, the entire argument—is inapposite because *Noah Sys.* is a case addressing means plus function claiming and Section 112 *invalidity*, not Section 101 *ineligibility*. *See Noah Sys.*, 675 F.3d at 1311. Indeed, all of the cases Wireless Discovery cites in this section of its purported *Alice* step one discussion are invalidity opinions, not eligibility opinions.[8]

Of course, neither eHarmony nor TMG has raised an invalidity argument, nor did the District Court address one. Instead, the district court simply noted that the representative claims failed to recite "specific rules or algorithms for a computer to achieve an improved technological

---

[8] *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011); *IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1119 (Fed. Cir. 2011); *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1365–66 (Fed. Cir. 2003).

result" and distinguished *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). (Appx072-073.)

**Fourth**, Wireless Discovery disputes the District Court's representativeness determination. Wireless Discovery argues that "the district court's distillation of claim elements into abstract blurbs" is not "fair" because it "destroyed numerous claim limitations." (Appellant's Brief p. 28.) But, once again, Wireless Discovery fails to actually identify "*what* additional concrete and technical elements the other claims recite" that would require this Court "to conduct a separate patentability analysis." (Appx068) (emphasis in original). In other words, Wireless Discovery once again fails to "present any meaningful argument for the distinctive significance of any claim limitation not found in the representative claim." *Berkheimer*, 881 F.3d at 1365 (citations omitted).

### b.    The claims of the '352 patent, the '267 patent, and the '397 patent are directed to abstract ideas

As a preliminary matter, Wireless Discovery directs essentially all substantive argument in its brief to the '875 patent. The other three asserted patents—the '352 patent, the '267 patent, and the '397 patent— are not even mentioned once in the "Arguments" section of Wireless

Discovery's brief, much less substantively argued. Wireless Discovery has thus forfeited any arguments specifically regarding these three patents and may not raise them in reply or at oral argument. *Garza v. Citigroup Inc.*, 881 F.3d 277, 284–85 (3d Cir. 2018) ("Raising an issue in a reply brief is too late, for as a general matter, an appellant waives an argument in support of reversal if it is not raised in the opening brief.") (cleaned up).

The only references to the '352 patent, the '267 patent, and the '397 patent are in the final paragraph of Wireless Discovery's "Statement of Facts," in which Wireless Discovery briefly states that claim 16 of the '352 patent, claim 1 of the '267 patent, and claim 1 of the '397 patent contain limitations that "further avoid[] preempting the field and add[] further inventive concepts that support that the claimed inventions frame patent eligible subject matter." (Appellant's Brief p. 15.) This solitary paragraph in the statement of facts is no argument at all, let alone an argument detailed enough to avoid forfeiture. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").

But regardless of Wireless Discovery's failure to argue the '352, '267, and '397 patents, all are ineligible for the same reasons that the '875 patent is ineligible. As the district court correctly found, the representative claims of the '352, '267, and '397 patents are also directed to the abstract idea of social networking. (Appx070-072) (discussing Claim 1 of the '352 patent, Claim 1 of the '267 patent, and Claim 1 of the '397 patent.)

In sum and summary, the district court got it right: the representative claims of the asserted patents describe the abstract idea of social networking.

> 2.    *Alice* Step Two: The Claims of the Asserted Patents Do Not Recite a Patent-Eligible Inventive Concept

At *Alice* step two, the Court looks for an "inventive concept"— "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217–18 (citation and internal quotation marks omitted). In performing this analysis, the Court "consider[s] the claim elements—individually and as an ordered combination—'to assess whether [they] transform the nature of the claim into a patent-eligible application of the abstract idea.'" *Realtime Data*,

2023 WL 4924814, at *10 (quoting *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017)). The inventive concept must amount to more than "well-understood, routine, or conventional activities." *Alice*, 573 U.S. at 225 (cleaned up). Moreover, the "mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *In re TLI Commc'ns, LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016).

Wireless Discovery has never been able to identify a single supposed inventive concept that would even *arguably* transform the abstract idea of "social networking" into a patent eligible invention anywhere in any of the Asserted Patents—let alone a single inventive concept *in a single claim* of the Asserted Patents as the controlling legal authority requires. (Appx074-075) ("Wireless Discovery only cites to the specification in its brief, not to the claims, to support its bare assertions that the asserted patents recite an inventive concept.") Instead, Wireless Discovery merely attempts to critique the district court's allegedly improper distillation of the claim elements and criticism of Wireless Discovery for relying exclusively on the specifications to find an inventive concept. (Appellant's Brief p. 33–34.) But of course, Wireless Discovery's

arguments ignore that it never presented argument to the district court, or this Court, about any specific alleged inventive concepts in the claims. (*See* Appx074) ("Wireless Discovery makes several conclusory statements that the asserted patents recite an inventive concept . . . . However, Wireless Discovery's alleged inventive concepts are merely rephrasing the abstract idea and saying it is an inventive concept, which is improper.")

The representative claims of the asserted patents, whether considered individually or as an ordered combination, lack an inventive concept and therefore fail to "add enough to 'transform the nature of the claim' into a patent-eligible application." *Elec. Power Grp.*, 830 F.3d at 1355 (quoting *Alice*, 573 U.S. at 216). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' Those 'additional features' must be more than 'well-understood, routine, conventional activity.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citations omitted). As the district court correctly held, the claimed social networking system "uses 'available technology and standard protocols available today,' including a 'standard cell phone,'

a 'cellular phone network,' 'existing standard Bluetooth technology,' and 'Wi-Fi.'" (Appx073) (citations omitted). Thus, the claims do not "require anything other than 'off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.'" (Appx073-074) (quoting *Elec. Power Grp.*, 830 F.3d at 1355).

Wireless Discovery takes issue with the district court's opinion on *Alice* step two by referring to asserted patents' "unique hardware identifiers" and use of "credentials-based authentication." (Appellant's Brief p. 31.) Even though Wireless Discovery did not raise these arguments to the district court and has forfeited them, they are also meritless. The district court addressed the "unique hardware identifiers" and found that they were "just generic computing components used for their conventional purpose." (Appx068.) Wireless Discovery has not rebutted that conclusion here, nor could it plausibly do so. (*See, e.g.*, Appx115) (referencing the "unique" mobile device identifying attribute, "e.g., Bluetooth addresses".) As to the alleged "credentials-based authentication," Wireless Discovery does not explain why this is an inventive concept, instead referring to it as broadly constituting an

"ordered combination of limitations." (Appellant's Brief p. 31–34.) Wireless Discovery fails to explain how this alleged "credentials-based authentication" is anything more than receiving and processing information in an expected way that would transform the abstract claims into "something more." *Alice*, 573 U.S. at 217; *see also Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1366 (Fed. Cir. 2023). Wireless Discovery argues generally that "the court should recognize that the 'ordered combination' of linking a user device to a unique identifier, requiring credentials-based authentication, and filtering available users based on location data and user preferences, is more than sufficient inventive conception to satisfy *Alice* step two." (Appellant's Brief p. 34.) But that generic argument is not tied to the claims of the asserted patents, and is devoid of any support in the record.

The representative claims describe a straightforward application of an abstract idea using conventional computer components, and are therefore distinguishable from the decisions that Wireless Discovery cites in its brief, which involved claims directed to solutions for specific problems that other techniques could not solve. In *DDR Holdings, LLC v. Hotels.com, L.P.*, for example, the claims recited operations of an

"outsource provider" in an e-commerce system that presented web pages to consumers who are redirected to the outsource provider by clicking on advertisements on various hosts' websites. 773 F.3d at 1257. This Court held that the claims satisfied *Alice* step two because the claims solved a problem unique to cyberspace—retaining control over consumers' attention—in a way that was different from the approach used by traditional hyperlink protocols. *Id*. at 1257–58.

In *BASCOM*, this Court held that claims recited a patent-eligible concept under *Alice* step two because they claimed a filtering tool that was installed at a specific network location, remote from end-user computers, and that provided customizable filtering features specific to each end user. 827 F.3d at 1350. The *BASCOM* claims recited features that improved existing filtering schemes by making them both adaptable to individual user preferences and installed at a remote location so they would be robust against hacking. *Id*. In short, the claims improved the functionality of other filtering schemes.

The patent claims in these cases are distinguishable from Wireless Discovery's representative claims. The representative claims describe an a conventional and expected sequence of data processing events

41

describing social networking: receiving information identifying users and their locations, connecting users based on location, and allowing the exchange of information between the users. (Appx069-073.)

As it did in the district court, Wireless Discovery points to nothing that demonstrates that the claims require anything more than generic computer components receiving and processing information in an expected way. As the district court explained, Wireless Discovery's arguments as to inventive concept are "bare assertions," "conclusory," and "untethered to the claim language of the asserted patents." (Appx074-075.) The district court was correct to find that the claims of the asserted patents did not contain an inventive concept and were thus invalid under Section 101.

## VII. CONCLUSION

The district court correctly held that Wireless Discovery's patents are directed to an ineligible abstract idea under 35 U.S.C. § 101. Its judgment should be affirmed.

Date: November 7, 2023    BAKER & HOSTETLER LLP

*/s/ Douglas A. Grady*
Douglas A. Grady, Esq.
999 Third Avenue, Suite 3900
Seattle, Washington 98104
Telephone: (206) 566-7120
Email: dgrady@bakerlaw.com

Andrew E. Samuels, Esq.
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215
Telephone: (614) 228-1541
Email: asamuels@bakerlaw.com

Jeffrey J. Lyons, Esq.
1201 N. Market Street, Suite 1407
Wilmington, Delaware 19801
Telephone: (302) 468-7088
Email: jjlyons@bakerlaw.com

Kevin P. Flynn, Esq.
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202
Telephone: (513) 852-2627
Email: kflynn@bakerlaw.com

*Attorneys for The Meet Group, Inc.;*
*eHarmony, Inc.*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 8,180 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook font size 14.

Date: November 7, 2023

BAKER & HOSTETLER LLP

*/s/ Douglas A. Grady*
DOUGLAS A. GRADY

*Attorneys for The Meet Group, Inc.; eHarmony, Inc.*